UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| RONNI MARKS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 3:23-cv-00691 |
| | ) |
| SKYWEST AIRLINES and JASON | ) |
| ALEXANDER, in his individual | ) |
| and professional capacities, | ) |
| | ) |
| Defendants. | ) |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL DISCOVERY**

**WIGDOR LLP**

Michael J. Willemin (*pro hac vice*)
Brooke Payton (*pro hac vice*)
Molly Zhu (*pro hac vice* pending)

85 Fifth Avenue
New York, NY 10003 Telephone:
(212) 257-6800
Facsimile: (212) 257-6845
mwillemin@wigdorlaw.com
bpayton@wigdorlaw.com
mzhu@wigdorlaw.com

*Counsel for Plaintiff*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

BRIEF BACKGROUND ........................................................................................................1

LEGAL ARGUMENT.............................................................................................................6

I.   Legal Standard on Motion to Compel......................................................................6

II.  Plaintiff Independently Discovered Other Instances of Sexual Assault Complaints Reported at SkyWest................................................................................................6

    A.   Mary Morgan was a Female SkyWest Flight Attendant who was Drugged and Sexually Assaulted by a SkyWest Pilot While on a Layover .................................8

    B.   Case No. 464 Involves a Female SkyWest Flight Attendant who was Drugged and Sexually Assaulted by a SkyWest Pilot While on a Layover ..........................9

    C.   Case No. 362 Involves a Female SkyWest Flight Attendant who was Drugged and Sexually Assaulted by a SkyWest Pilot While on a Layover ........................11

    D.   Case No. 963 Involves a Female SkyWest Flight Attendant who was Drugged and Sexually Assaulted by a SkyWest Pilot While on a Layover ........................11

    E.   Case No. 661 Involves a Female SkyWest Flight Attendant who was Sexually Assaulted by a SkyWest Pilot While on a Layover ..............................................12

    F.   Case No.705 Involves a Male SkyWest Pilot who was Groped by a Male SkyWest Flight Attendant.......................................................................................12

III. Plaintiff is Entitled to Discovery on Other Instances of Sexual Assault Within SkyWest ..................................................................................................................14

CONCLUSION......................................................................................................................17

## TABLE OF AUTHORITIES

**Cases**                                                                                                       **Page(s)**

Abouhalima v. C.O. Lotz,
   No. 21 Civ. 029 (JPH)(MG), 2022 WL 22889710 (S.D.Ind. Jun. 30, 2022)............................ 13

Arcelormittal Indiana Harbor LLC v. Amex Nooter, LLC,
   No. 15 Civ. 195 (PRC), 2016 WL 4978429 (N.D.Ind. Sept. 19, 2016).................................. 13

Byers v. Illinois State Police,
   No. 99 Civ. 8105 (NRN), 2002 WL 1264004 (N.D.Ill. June 3, 2002) .................................. 15

Cunningham v. Smithkline Beecham,
   255 F.R.D. 474 (N.D.Ind. 2009)......................................................................................... 6

Gregg v. Local 305 IBEW,
   No. 08 Civ. 160 (RBC), 2009 WL 1325103 (N.D.Ind. May 13, 2009)..................................... 6

Pruitt v. Knight,
   18 Civ. 1658 (TWP)(MJD), 2019 WL 1416726 (Mar. 29, 2019) ........................................... 14

Romary Associates, Inc. v. Kibbi LLC,
   No. 10 Civ. 376 (RBC), 2011 WL 4005346 (N.D. Ind. Sept. 8, 2011) ..................................... 6

Sattar v. Motorola, Inc.,
   138 F.3d 1164 (7th Cir. 1998) ............................................................................................ 6

Scaife v. Boenne,
   191 F.R.D. 590 (N.D.Ind. 2000)....................................................................................... 14

Yessenow v. Hudson,
   270 F.R.D. 422 (N.D.Ind. 2010)......................................................................................... 6

**Rules**

Fed. R. Civ. P. 26(b)(1)........................................................................................................... 15

Fed. R. Civ. P. 33................................................................................................................. 1, 6

Fed. R. Civ. P. 34................................................................................................................. 1, 6

Fed. R. Civ. P. 37................................................................................................................. 1, 6

Fed. R. Evid. 404(b)................................................................................................................ 14

Plaintiff Ronni Marks ("Plaintiff") files this Motion to Compel Discovery from Defendant SkyWest ("SkyWest") pursuant to Federal Rules of Civil Procedure ("FRCP") 33, 34 and 37.

**BRIEF BACKGROUND**

In this sexual assault and employment action, Plaintiff alleges that, while working for SkyWest as a flight attendant, she was drugged and raped at a hotel during an overnight layover by a pilot named Jason Alexander ("Alexander"), an individual Defendant in this case. Dkt. No. 1 at ¶¶ 20-34. She also alleges that SkyWest was negligent in hiring, supervising and retaining Alexander, and that such negligence led to the horrific rape. Id. at ¶¶ 54-62. In addition to this, Plaintiff alleges that SkyWest was negligent in conducting an internal investigation following her report of rape. Id. at ¶¶ 38-43. Namely, SkyWest was negligent in that, (i) it did not even consider results from Plaintiff's rape kit and toxicology report in its investigation; (ii) it sought to silence Plaintiff while the investigation was ongoing via a non-disclosure agreement; (iii) it discouraged Plaintiff from conferring with her legal counsel; (iv) it declined to ensure Plaintiff would not have to be staffed alongside Alexander following her rape; (v) it asymmetrically put Plaintiff on administrative leave at the start of the investigation but allowed Alexander to continue flying with impunity and thus exposed other SkyWest staff (including other young female flight attendants). Id. These are only a few examples of SkyWest's blatant negligence.

As such, the prevalence of other sexual assaults of flight attendants by pilots and SkyWest's subsequent investigation and handling of reports of these assaults are at the heart of this case. Since March of 2024, Plaintiff has repeatedly asked SkyWest for discovery related to other instances, reports, complaints and/or investigations into prior sexual assaults at SkyWest, and SkyWest has refused to provide such documents. It was not until Plaintiff unilaterally discovered analogous filings (including underlying SkyWest complaints relating to sexual assault committed

1

by SkyWest pilots against SkyWest flight attendants) in connection with another publicly filed litigation, that it became clear SkyWest was purposely and improperly withholding documents and interrogatory answers in discovery *for over an entire year.*

On March 28, 2024, Plaintiff made 47 document requests and 16 interrogatories, see Declaration of Brooke Payton ("Payton Decl."), Exhibits 1 and 2. In particular, Plaintiff requested the following from SkyWest:[1]

- Document Request No. 10: "Produce all documents, communications and/or ESI concerning policies and procedures for making a complaint of sexual assault against another employee of SkyWest that were in use and/or in effect at any time during Ms. Marks's employment."

- Document Request No. 11: "Produce all documents, communications and/or ESI concerning policies and procedures for conducting an investigation into a sexual assault complaint against an employee of SkyWest that were in use and/or in effect at any time during Ms. Marks's employment."[2]

- Document Request No. 18: "Produce all documents communications and/or ESI concerning complaints, whether formal or informal, regarding Mr. Alexander throughout the duration of his employment at SkyWest, including any investigations or responses to such complaints."

- Document Request No. 19: "Produce all documents, communications and/or ESI concerning complaints of sexual assault, whether formal or informal, against any SkyWest pilot by any SkyWest pilot or crewmember from January 2015 through the present."

- Document Request No. 20: "Produce all documents, communications and/or ESI concerning investigations into

---

[1]   While Document Request Nos. 10 and 11 and Interrogatories Nos. 8 and 9 were not listed in our deficiency letter sent on May 23, 2024, they are nevertheless listed here as discovery requests that have gone unanswered by SkyWest.

[2]   We note that this Document Request includes *policies governing the choice to take adverse employment actions against employees accused of sexual assault following such investigation* as described in PL000547 by a SkyWest Employee Relations staff member: "SkyWest is held to a specific threshold to begin any form of adverse employment action, which we have not met. This type of employment action would include removing schedules, no contact with specific employees and termination."

2

- complaints of sexual assault, whether formal or informal, against any SkyWest pilot by any SkyWest pilot or crewmember from January 2015 through the present."

- Document Request No. 21: "Produce all documents, communications and/or ESI concerning Ms. Mary Morgan's complaint that Capt. Robert L. Rowe sexually assaulted her in 2018."

- Document Request No. 22: "Produce all documents, communications and/or ESI concerning the investigation into Ms. Morgan's complaint that Capt. Rowe sexually assaulted her, including but not limited to, typed and/or handwritten notes of interviews conducted throughout the course of the investigation, any reports or findings concerning the ultimate conclusion of the investigation (as well as any drafts thereof) and any recommended actions or remedial measures to be taken based on the results of the investigation."

- Interrogatory No. 3: "Identify each and every employee or former employee of SkyWest who has made formal or informal complaints of sexual assault at the Company."

- Interrogatory No. 5: "Identify each any every employee or former employee who has filed lawsuits against SkyWest related to sexual assault, negligence, negligent supervision, negligent retention and/or emotional distress."

- Interrogatory No. 8: "Describe the policies and procedures for investigating complaints of sexual assault by employees of SkyWest."[3]

- Interrogatory No. 9: "Describe the procedure that was followed for investigating Ms. Marks's complaint that Mr. Alexander sexually assaulted her."

On April 26, 2024, SkyWest responded to the requests, see Payton Decl., Exhibits 3 and 4, and made an initial production of documents. However, SkyWest has repeatedly failed to produce

---

[3] We note that this Interrogatory includes *policies governing the choice to take adverse employment actions against employees accused of sexual assault following such investigation* as described in PL000547 by a SkyWest Employee Relations staff member: "SkyWest is held to a specific threshold to begin any form of adverse employment action, which we have not met. This type of employment action would include removing schedules, no contact with specific employees and termination."

3

the entirety of the requested documents and appropriately and fully respond to the propounded interrogatories, despite multiple attempts by Plaintiff to obtain proper responses over the course of more than an entire year since Plaintiff served her initial discovery requests. On May 23, 2024, *nearly one year ago*, Plaintiff sent a deficiency letter to SkyWest that specifically identified these and many other deficient responses. See Payton Decl., Exhibit 5. SkyWest never responded to this letter. On December 19, 2024, Plaintiff sent supplemental document requests to SkyWest. See Payton Decl., Exhibit 6. On January 16, 2024, Plaintiff re-sent the initial deficiency letter and again asked SkyWest to respond. See Payton Decl., Exhibit 7. SkyWest once again ignored Plaintiff's request and never responded. On February 6, 2025, hearing nothing, Plaintiff asked that SkyWest respond to all outstanding discovery items by February 14, 2025. See Payton Decl., Exhibit 8. On February 14, 2025, SkyWest made a supplemental production, which was largely duplicative of previously produced documents and failed to provide responsive documents to the requests listed above. See Payton Decl. ¶ 10. Moreover, SkyWest's supplemental production did not come with any response to Plaintiff's multiple attempts to meet and confer regarding SkyWest's deficient responses.

Independently, Plaintiff has incurred costs and spent time and resources on attempting other means of acquiring the documents that have been repeatedly requested. Plaintiff was able to obtain some responsive documents (at a cost) from public court filings from Mary Morgan's case against SkyWest, filed in Pierce County Court in Seattle, Washington in 2018, including five other internal reports and investigations, described in detail and attached as Exhibits 12-17 *infra* at pp. 5-10, of other sexual assaults that SkyWest has investigated in the past. See Payton Decl., ¶¶ 11-12. Plaintiff immediately produced these documents to SkyWest on March 31, 2025. See Payton Decl., ¶ 13. Plaintiff has now confirmed that documents responsive to her discovery requests do

4

indeed exist and are undoubtedly in SkyWest's possession, yet SkyWest has repeatedly refused to produce them. To dodge discovery requests in such a manner is flagrantly delinquent.

As noted above, Plaintiff has attempted to meet and confer with SkyWest on these issues. After months of repeated and ignored requests by Plaintiff for SkyWest to produce the aforementioned documents or even respond to its initial May 23, 2024 deficiency letter, Plaintiff sent a letter to SkyWest on April 2, 2025, laying out the history of requests, the missing aspects of SkyWest's production, and offering again to meet and confer. See Payton Decl., Exhibit 9. The letter also stated that if SkyWest continued to ignore Plaintiff's requests, then Plaintiff would be forced to file a motion to compel on April 9, 2025. SkyWest responded to the letter on April 7, 2025 but failed to address Plaintiff's main points and merely regurgitated the same rote objections that SkyWest has continually made and was silent as to whether or not they would agree to meet and confer. See Payton Decl., Exhibit 10. What's more, on April 8, 2025, Plaintiff followed up again to ask SkyWest if they would be open to a telephonic meet and confer. See Payton Decl., Exhibit 11. It was not until April 9, 2025 (the date of the filing of this motion) at 11:35 a.m., that SkyWest agreed to meet and confer. See Payton Decl., Exhibit 12. Subsequently, SkyWest and Plaintiff discussed via a telephonic meeting that lasted approximately 11 minutes – the first actual meeting about SkyWest's discovery deficiencies to occur thus far in this case. SkyWest provided the same boilerplate reasoning for why they thought Plaintiff's requests were overly broad in time and scope and argued were not likely to return responsive documents. Plaintiff's counsel again explained that their independent search had uncovered documents that were directly relevant, responsive and crucial. Plaintiff's counsel also explained SkyWest had never disclosed that responsive documents were being withheld due to privilege, and ultimately the parties "agreed to disagree" on the relevance of the underlying documents sought in this motion. See Payton Decl.,

5

¶¶ 18-20. At this point, with the discovery deadline rapidly approaching, Plaintiff has exhausted all other options to avoid court intervention.

## LEGAL ARGUMENT

I. **Legal Standard on Motion to Compel**

Under Rule 37, if "a party fails to answer an interrogatory submitted under Rule 33; or a party fails to produce documents . . . as requested under Rule 34[,]" then the "party seeking discovery may move for an order compelling an answer [or] production." Fed. R. Civ. P. 37; see also Yessenow v. Hudson, 270 F.R.D. 422 (N.D.Ind. 2010) ("A party may seek an order to compel discovery when an opposing party fails to respond to discovery requests or has provided evasive or incomplete responses."). The burden "rests upon the objecting party to show why a particular discovery request is improper." Gregg v. Local 305 IBEW, No. 08 Civ. 160 (RBC), 2009 WL 1325103, at *8 (N.D.Ind. May 13, 2009). The opposing party must do more than make "a reflexive invocation of the same baseless, often abused litany that the requested discovery is vague, ambiguous, overly broad, unduly burdensome or that it is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence." Cunningham v. Smithkline Beecham, 255 F.R.D. 474, 478 (N.D.Ind. 2009). The Court has broad discretion in deciding whether to compel discovery. Romary Associates, Inc. v. Kibbi LLC, No. 10 Civ. 376 (RBC), 2011 WL 4005346, at *2 (N.D. Ind. Sept. 8, 2011) (citing Sattar v. Motorola, Inc., 138 F.3d 1164, 1171 (7th Cir. 1998)).

II. **Plaintiff Independently Discovered Other Instances of Sexual Assault Complaints Reported at SkyWest**

As of March of this year, Plaintiff has gone to extraordinary lengths to independently obtain only some of the documents that SkyWest has repeatedly refused to produce. From the few documents Plaintiff has uncovered, it is abundantly clear that SkyWest has been withholding

6

crucial, responsive and relevant information within its possession. Plaintiff should not be incurring costs and spending time and resources to find documents that SkyWest could have, and should have, produced almost an entire year ago. Plaintiff was able to find public court filings from Mary Morgan's case against SkyWest, which was filed in Pierce County Court in Seattle, Washington in 2018. These filings included not only documents and communications about Ms. Morgan's sexual assault and the subsequent SkyWest investigation but also exhibits of internal reports, communications and investigations into five other sexual assaults that SkyWest had investigated in 2018 and 2019, among other documents. Immediately upon discovering and reviewing these filings, Plaintiff produced them to SkyWest on March 31, 2025. See Payton Decl., Exhibits 12-17.[4] Plaintiff has now confirmed that documents responsive to her discovery requests do indeed exist and are undoubtedly in SkyWest's possession,[5] yet SkyWest still refuses to produce them.

These six total reports and investigations into sexual assaults have many striking similarities – not only to Plaintiff's case but also to each other. There appears to be a pattern and practice of SkyWest pilots drugging and sexually assaulting flight attendants at hotels during overnight layovers that occur on company time. There appears to be a through-line of fear amongst flight attendants of punishment and retaliation if they were to report these pilots. It further appears that SkyWest's *modus operandi* for sexual assault reports is to conduct a sham "investigation" that results in no material or substantial action taken against the accused pilots and that results in flight attendants being put on leave while the pilots continue to fly unimpeded. In the investigation notes, the flight attendants each ask SkyWest to protect them from seeing or interacting with their

---

[4] With the exception of Ms. Morgan, the alleged victims ("AV") and alleged perpetrators ("AP") are kept anonymous in these reports. They will be referred to in this motion by their three-digit case numbers. Plaintiff asks that SkyWest produce these reports, and any other that exist from 2018 to present, in their unredacted form.

[5] Plaintiff also discovered that Chad Shultz, attorney for SkyWest in this case, also represented SkyWest in Ms. Morgan's case. Clearly, SkyWest and their counsel know these documents exist and still refuse to produce them to Plaintiff.

7

rapists at work – only to be ignored, dismissed and shooed away. SkyWest plainly has a double standard when it comes to pilots and flight attendants – pilots are treated like untouchable kings while flight attendants are completely disposable. It is clearly evident from the documents that Plaintiff was able to uncover, that these six sexual assaults and related investigations are just the tip of the iceberg. It is also clear that these documents and evidence are relevant to Plaintiff and covered by our discovery requests and deficiency letters to date.

### A. Mary Morgan was a Female SkyWest Flight Attendant who was Drugged and Sexually Assaulted by a SkyWest Pilot While on a Layover

Ms. Morgan reported being drugged and sexually assaulted by Robert Rowe ("Rowe"), a male pilot, while at a hotel on an overnight layover in November 2016. See Payton Decl., Exhibit 13. After attending a hockey game with Rowe and consuming a few alcoholic beverages, Ms. Morgan blacked out and woke up the next morning with only a few hazy memories of being raped by Rowe. Ms. Morgan felt afraid to report what had happened to her; she knew Rowe was a well-liked pilot, and she felt that no one would believe her. Around two weeks later, she worked up the courage to report the rape to SkyWest and repeatedly asked the Company to protect her from seeing or interacting with Rowe, who was still free to fly and participate in overnight layovers without incident. SkyWest did not even interview Rowe until nearly a full year later.[6] Ms. Morgan's pleas for the Company to do something fell on deaf ears, even though she asked numerous times during the course of SkyWest's investigation:

- "I'm curious why it's my responsibility to avoid working with bob? . . I would like to know what's being done to protect me [from] being retaliated against by the man who sexually assaulted me."

- "My therapist is asking me to have a detailed action from my company that is protecting me from seeing my rapist. The only

---

[6] The investigation into Ms. Morgan's report was a sham from start to finish. SkyWest never interviewed Ms. Morgan and never reviewed the police investigation and report, Ms. Morgan's deposition or the relevant hotel video. PL001552.

8

- advice I have been given is to bid avoid my rapist. I would like to know what is being done to protect me and my work environment from running into my rapist."

- "I'm only trying to survive my work environment."

- "This is proof that I asked for help in May to help make my work environment safe. This was the meeting that the advice was given to transfer or take a leave to avoid my rapist."

- "I haven't felt safe at [work] for 10 months. I just need to know that I'm going to be protected from the man who raped me."

- "I have enough anxiety about running into my attacker at the airport just trying to get to and from work."

- "I'm sure that you want to ensure a safe work environment, and you asked what is needed to make me feel safe. My answer is, not seeing the man who raped me while I was unconscious at work."

- "I have emails dating back to when I first reported the assault, asking for help on how to negotiate work. I asked no less than 7 times with my only suggestions being bid avoid and take a leave."

- "I have been trying to get your department to listen to me for a year."

- "What I need to feel safe at work is to not see my attacker, evet. I am asking for the Company to ensure that this happens, by overseeing our schedules and adjusting his if necessary to ensure that we do not cross paths."

- "I am asking that the Company ensure that we do not cross paths, so that I do not have to constantly watch the flow board to see if he's flying."

At the end of SkyWest's investigation, Rowe was not terminated. Instead he was "counseled" by the Company for lying to them during the investigation.

  **B. Case No. 464 Involves a Female SkyWest Flight Attendant who was Drugged and Sexually Assaulted by a SkyWest Pilot While on a Layover**

  In July 2018, another female flight attendant reported being drugged and sexually assaulted by a male pilot at a hotel during an overnight layover. See Payton Decl., Exhibit 14. The flight

9

attendant in Case No. 464 first endured sexual harassment from the pilot over dinner with the rest of the crew, including being asked if she had ever slept with a pilot before (she said no and the pilot responded, "We will see what you say by the end of the night!") and being shown photographs of unconscious naked women on the pilot's phone. The flight attendant did not remember leaving the restaurant, likely because she had already been drugged by the pilot. She awoke the next morning in her hotel room experiencing an incredible amount of pain in her vagina and anus. The pilot's pants were in her room, and she was not wearing underwear. When she asked the pilot what happened, he told her that they had sex. She told him she had no memory of the events, and the pilot replied, "Don't go make up some story that you were drugged and raped because I know some girls would do that." The pilot also offered to write a good recommendation for the flight attendant to the Company but implied that she must keep quiet about what happened to her.

The flight attendant in Case No. 464, like Ms. Morgan, found that SkyWest offered no support for sexual assault victims and placed the onus on her to avoid her rapist at work. She repeatedly encountered him while on the job, despite her pleas to the Company for protection:

- "I am willing and able to continue working for SkyWest. But I should not be put in this position. The company has a responsibility to protect me from my rapist. No person should have to be around a person who hurt them. . . . How I am supposed to feel safe when he is free to be around anywhere I am."

- "Theres nothing I can do because you guys want me to be silent so I have to run like a coward."

- "[The pilot] feels like he is immune. Because who wouldn't if there's no consequences to actions."

- "Please protect me!"

- "I don't know what else I can do to try and avoid this. I have reported this to SkyWest [multiple] times and I am still not being protected from a man who raped me."

10

The pilot in Case No. 464 was allowed to continue flying unimpeded. SkyWest merely issued him a "counselling statement" and continued to employ him.

### C. Case No. 362 Involves a Female SkyWest Flight Attendant who was Drugged and Sexually Assaulted by a SkyWest Pilot While on a Layover

In May 2018, another female flight attendant reported being drugged and sexually assaulted by a male pilot at a hotel on an overnight layover. See Payton Decl., Exhibit 15. She went to dinner with the rest of her crew, but the next thing she remembered was waking up in her hotel room with no pants on. The pilot was laying next to her in bed in his boxers. She could not stop vomiting. The pilot told her that they had sex the night before, and she told him that she had no memory of the night before. Two other crewmembers told SkyWest that she had a "noticeable quick change or shift in what seemed to be intoxication level" at the restaurant. SkyWest was "unable to verify any Company policy was violated" and no action was taken against the pilot, who continued to fly.

### D. Case No. 963 Involves a Female SkyWest Flight Attendant who was Drugged and Sexually Assaulted by a SkyWest Pilot While on a Layover

In February 2019, another female flight attendant reported being drugged and sexually assaulted by a male pilot at a hotel on an overnight layover. See Payton Decl., Exhibit 16. She went to dinner with the whole crew and had no memory of returning to the hotel. She woke up the next morning, completely naked in the pilot's bed. She couldn't remember the night before but she knew she had been sexually assaulted. She threw up repeatedly that morning. Later, after she reported her assault, the hotel staff said that when she arrived back to the hotel after dinner, she was visibly intoxicated and the pilot was "dragging her along." The flight attendant in Case No. 963 was very scared of making her report because she did not "want to lose her job." The

11

pilot was to be counseled for "behavior impacting fitness for duty," but he resigned from SkyWest before such counselling could occur.

### E. Case No. 661 Involves a Female SkyWest Flight Attendant who was Sexually Assaulted by a SkyWest Pilot While on a Layover

In October 2018, another female flight attendant reported being sexually assaulted by a male pilot at a hotel on an overnight layover. See Payton Decl., Exhibit 17. The pilot invited her to his hotel room to watch a show. When she arrived, he pinned her to the bed by sitting on her chest and forced her to perform oral sex on him. The flight attendant in Case No. 661 immediately reported what happened but expressed extreme stress and fear of retaliation for doing so. Incredibly, the pilot was eventually coached simply "regarding leadership and influence as a captain . . . and how his interactions can sway culture, perception, and colleague trust" and was allowed to continue flying without further repercussions.

### F. Case No. 705 Involves a Male SkyWest Pilot who was Groped by a Male SkyWest Flight Attendant

In October 2018, a *male* pilot reported being groped by a *male* flight attendant while sleeping between flights in a crew lounge at an airport. See Payton Decl., Exhibit 18. The flight attendant claimed that it was dark in the room and that he was searching for his phone, but the pilot said he awoke three times to the same flight attendant first trying to and then successfully unzipping his pants and groping him. Importantly, this is the only one of the six cases where a male pilot was the victim of a sexual assault, and the result is shockingly different than the other five cases where female flight attendants were the victims. In Case No 705, the male flight attendant was promptly terminated for violating SkyWest policies. It is notably the *only* example within these six known complaints in which a sexual assault aggressor was terminated. It is not a coincidence that the victim in this case was a male pilot.

### III. Plaintiff is Entitled to Discovery on Other Instances of Sexual Assault Within SkyWest

It is clear from the above six examples that there is a serious rot within SkyWest, where male pilots are free to sexually assault female flight attendants on company time without facing any repercussions whatsoever. Plaintiff is entitled to discovery on other complaints against Alexander or any other pilot for sexual assault, as well as SkyWest's responses to those complaints, so that Plaintiff may support her claims that SkyWest's *modus operandi* is to bury its head in the sand and protect pilots who engage in sexual assault, and that the Company's apathy with respect to these matters results in sexual assaults, including the one committed against Plaintiff. Documents that evince "a pattern and practice" are relevant and discoverable. Arcelormittal Indiana Harbor LLC v. Amex Nooter, LLC, No. 15 Civ. 195 (PRC), 2016 WL 4978429, at *4 (N.D.Ind. Sept. 19, 2016) (granting a motion to compel documents related to allegations that a party displayed "a pattern and practice"); Abouhalima v. C.O. Lotz, No. 21 Civ. 029 (JPH)(MG), 2022 WL 22889710, at *3 (S.D.Ind. Jun. 30, 2022) (granting a motion to compel documents that evince "motive, intent, absence of mistake or accident, or *modus operandi*") (emphasis added). Plaintiff's discovery requests at issue in this motion seek documents and responses showing SkyWest's pattern and practice, and SkyWest must comply with such requests.

In Document Request No. 18, Plaintiff asks for all complaints at SkyWest against Jason Alexander, the individual Defendant and male pilot who sexually assaulted Plaintiff at a hotel during an overnight layover. SkyWest objected by arguing that the request invaded the privacy rights of third parties and was not relevant to the subject matter of this litigation. Plaintiff has told SkyWest as early as May 2024 that she is happy to enter into a confidentiality agreement to quell concerns about third party privacy – and even sent both Defendants a proposed confidentiality order on April 8, 2025 – but has not heard back. It is difficult to understand how other complaints

against the individual wrongdoer – and rapist – in this case would not be relevant to Plaintiff's claims of negligent hiring supervision and retention of Alexander against SkyWest. Further, in reviewing the newly discovered documents described above, Plaintiff learned of a new practice called "bid avoidance," where a flight attendant can list a pilot or more senior flight attendant as someone with whom they do not want to fly. Plaintiff maintains her request in Document Request No. 18 and clarifies to specifically request documents relating to anyone who has "bid avoided" Alexander and when, including underlying correspondence and recordkeeping.

In Document Requests Nos. 19 and 20 and Interrogatories Nos. 3 and 5, Plaintiff asks for documents relating to complaints of sexual assault against SkyWest pilots by any crewmember and any corresponding Company investigations or publicly filed lawsuits. SkyWest objected by arguing that the requests invaded the privacy rights of third parties and was not relevant to the subject matter of this litigation. Once again, Plaintiff is happy to enter into a confidentiality agreement with SkyWest. Plaintiff is clearly entitled to such discovery, as it is directly relevant to her claims that SkyWest was negligent in hiring, supervising and retaining Alexander and that it was negligent in "investigating" her complaint that Alexander sexually assaulted her. See Pruitt v. Knight, No. 18 Civ. 1658 (TWP)(MJD), 2019 WL 1416726, at *1 (Mar. 29, 2019) (granting motion to compel production of other "grievance complaints" about sanitation conditions at correctional facility, to support the plaintiff's claim that he was exposed to toxic mold); Scaife v. Boenne, 191 F.R.D. 590, 596 (N.D.Ind. 2000) (holding that complaints lodged against other employees was relevant where the employer was also a defendant in the case). Further, the newly uncovered documents discussed above plainly show that it is SkyWest's *modus operandi* to conduct sham investigations that clear all pilots of wrongdoing and allow them to continue to fly unfettered, even after being credibly accused of sexual assault. C.f. Fed. R. Evid. 404(b). This is

14

exactly what happened in most of the six cases discussed above, and it is exactly what happened to Plaintiff in this case. The six cases found by Plaintiff are likely only the tip of the iceberg of SkyWest's sexual assault problem, and it is obvious that documents relating to additional sexual assault complaints exist, are in SkyWest's possession, and yet still have not been produced in this litigation.

In Document Requests Nos. 21 and 22, Plaintiff asks for documents related to Mary Morgan's complaint against Robert Rowe and the corresponding Company investigation. SkyWest objected by arguing that the requests invaded the privacy rights of third parties and was not relevant to the subject matter of this litigation. Again, Plaintiff is happy to enter into a confidentiality agreement with SkyWest. SkyWest further objected that Request No. 21 seeks privileged materials, but SkyWest's privilege log only lists a handful of documents from July 2024, well past the applicable timeframe for Ms. Morgan's 2018 case. It is honestly terrifying how similar Plaintiff's experience with Alexander is to Ms. Morgan's experience with Rowe. As Plaintiff has learned more about Ms. Morgan's assault and experience with SkyWest's response to her complaint, it only further cements that SkyWest has a pattern of negligence and a true disregard for flight attendant safety. Such discovery goes to the heart of Plaintiff's claims against SkyWest, and therefore Plaintiff is entitled to these documents. See Fed. R. Civ. P. 26(b)(1); Byers v. Illinois State Police, No. 99 Civ. 8105 (NRN), 2002 WL 1264004, at *1 (N.D.Ill. June 3, 2002).

15

## CONCLUSION

For the reasons stated herein, Plaintiff respectfully requests that this Court issue an order to (1) compel SkyWest to produce documents responsive to Plaintiff's Document Request Nos. 10-11, 18-22, (2) compel SkyWest to respond in full to Interrogatories Nos. 3, 5, 8-9, and (3) award Plaintiff reasonable attorneys' fees and costs incurred from the filing of this motion.

Dated: April 9, 2025
      New York, New York

Respectfully submitted,

**WIGDOR LLP**

By: _____
    Brooke Payton (*pro hac vice*)
    Michael J. Willemin (*pro hac vice*)
    Molly Zhu (*pro hac vice* pending)

85 Fifth Avenue
New York, NY 10003
Telephone: (212) 257-6800
Facsimile: (212) 257-6845
mwillemin@wigdorlaw.com
bpayton@wigdorlaw.com
mzhu@wigdorlaw.com

*Counsel for Plaintiff*